Case numbers 25-1322, 25-2102, 25-2230, Kenneth Hunt v. Dale Acosta May it please the court, my name is Keith Wren, I represent Officer Dale Acosta in this appeal. The District Court erred when it prohibited Officer Dale Acosta from putting on evidence at trial that part of his justification for the arrest of the plaintiff was because the plaintiff had refused to abide by the local court's rules with regard to the running of his court. Probable cause in this case, the fundamental question is the facts and circumstances within the police officer's knowledge at the time of the arrest. This case was tried in January of last year and on the morning of the trial, the plaintiff made an argument to the District Court Judge that this court in its previous appellate holding had already ruled on the issue that Dale Acosta did not have probable cause to arrest the plaintiff based upon the plaintiff's refusal to abide by the State District Court's standing order concerning the running of his court. The District Court apparently agreed with that argument of the plaintiff and ruled that he would not allow such evidence. Additionally, a request was made that that evidence be allowed to be put on for the purposes of mitigating any claim of punitive damages against Officer Acosta. The District Court also denied that request and therefore the case went forward in a manner that inappropriately and unfairly prejudiced Officer Dale Acosta. So counsel didn't, didn't Judge King actually testify at trial, am I understanding the record? It was merely proffered testimony, your honor. Oh, okay. But, but everything he proffered to actually came in, it just came through a different place, right? I mean, because here's what we said, in our opinion, we said there was qualified immunity to the initial stop of Mr. Hunt, period, end argument, or I guess it was quasi-judicial immunity is what we said, but he had immunity for that first stop. The question was the extension and seizure of Mr. Hunt, and the question at that point was never based on the unwritten policy that was referred to at different times as an order, but there was no order. It was, it was the, what was the purpose for that, that arrest? And at no point did Officer Acosta ever say that he was arresting him for some violation of the policy or whatever else there was the quasi-judicial immunity for, right? And so in the end, the testimony all came in. I mean, like, the jury was well aware that there was a policy, they're well aware that we were doing the A to J and whatever else, and who was supposed to be in the courtroom when. They were well aware of the facts and circumstances of when Mr. Hunt left the courthouse, when he was put back into the courthouse, when he sat on his steps, when he left the steps, when he went down to go see the county judge or whatever he says he was going to do, right? That was all in front of the jury. So what exactly was Judge King going to say that was going to be any different than what's already in the record, except that Judge King got to say it, which is an absolutely not something we're supposed to be considering at this point. Okay. I'm sorry. I think I heard at least two questions there. Yeah, there's probably about three in there, so I'm sorry. Okay. So I would like to go back to at least the one I think I heard, and if I did, if that's the incorrect one, please let me know. So first off, the posture of this case on the first appeal never addressed that question. This came to this court in an unusual manner, and it's laid out in my briefing, but normally the way these things work out is the defendant officer files a motion based in part on qualified immunity, it's denied, and it comes to this court. I, for whatever reasons, decided that I would make a motion on about 14 different points, none of which were based on the issue of probable cause and qualified immunity. However, the day after I filed my motion, the plaintiff filed his own motion, seeking that the court rule as a matter of law that there was no probable cause for the arrest of the plaintiff. To which I defended that, asserting that there was quasi-judicial immunity and qualified immunity. And we wound up in a strange procedural posture, which perhaps has led to the, well maybe it was a strange ruling, because I wrote the opinion, I might have got it all wrong, and it would be the first time. But I would just tell you that what we said is there was quasi or quasi-judicial immunity for the initial stop, right? Yes. You know, and that was based on a policy or whatever. But the arrest was effectuated on a separate theory. That is the obstruction of governmental function, as it was postured before this court. There were two separate factual basis for the arrest, and that's verified in the record. If the court wants to look at it in the initial arrest report, the officer does assert that. It's at page 392 and 393 of the appendix. Additionally, the recording that I know that the court listened to prior to the last ruling and perhaps would listen to again, Officer Acosta did not do his job perfectly, we will admit that. He was, certain things he said were perhaps flustered and excited, but if you listen to the entire recording, he is trying to get Mr. Hunt back into the courtroom for the purpose of the upcoming trial for which he had been subpoenaed. That was why he was there. And the real, getting back to what I think is the second question, Judge Erickson, was has the jury already heard this evidence? The jury heard some background evidence. I mean, the whole case was circled about what happened in the courthouse that day and how people got there and what happened. And so, Officer Acosta testified about what his role was there that day, the role of other officers that day, the information he was provided, however, he was never allowed to say that I took the action that I did in arresting Mr. Hunt partially because he was defying the orders that were given to him through me and others of the Mariana Police Department.  And that's where the case was strange because the eliminate ruling was quite broad, but as the testimony came in, the testimony underlying sort of the race jeste of the whole thing comes flying in about who's doing what and doing it where and who was doing why and like we say, the officer testifies, well, the judge had a standing policy that we enforced. And so it all kind of comes in in the end. And so your claim is essentially, if I'm following you, is that, but nobody was ever able to say part of the reason that I, really not even the arrest, the initial stop in front of the tax office was as the result of the existence of this policy. That's correct. And as the testimony came in at trial, it was much clearer, I think, when it did because the officer testified about the procedures for when people enter the building and how they're told where they're supposed to be and when and what groups and whatnot. Secondly, Officer Acosta was, this first came to his attention, he was inside the courtroom when another officer came to him who said, Mr. Hunt is wandering around outside the building, he's wandering around in the hallways, he won't be going to the courtroom as per the rule. And so then that's when Officer Acosta came upon him. It wasn't because of an independent complaint about what he was doing in front of the tax collector's office at that time. And then the discussion ensued about where you need to be and when, which the second part of it came up on the second part of the appeal about how that discussion caused the distraction, or we contended disruption, but this court found distraction of what occurred in the tax collector's office. So we kind of had a dog leg there. Did Acosta say Judge King relied, past tense, relied on the officers and clerks to form every one of his rules and then detail his rules? I was trying to quote from the record. Okay, so I think that that was probably what Judge King said, that he had told Officer Acosta and others about what his rules were and he relied on the officers and the clerks to enforce those rules. So that's in King's proffered testimony. Okay, but Acosta testifies to several points about those rules, right? He does. However, he was never allowed to say that that was part of the basis for his belief that the plaintiff had committed obstructing governmental operations based upon the effect that... Well, this I don't have a quote from the record on, but did Acosta in his testimony say the reason he thought Hunt was obstructing governmental operations was the judge's orders? There was also proffered testimony from Mr. Acosta. He was on the stand right before the jury came in and there was a section of proffered testimony where he did put that in the record. But it's only proffered. Did that get to the jury? It did not. Did Acosta's get to the jury? No, that did not. Not that portion of it. There was a lot of his that did, obviously. And that gets to the other portion of this, that the second reason that the district court erred was that this testimony should have been allowed to show the mens rea or lack thereof of Officer Acosta. Let me go back. I was on the panel with Judge Erickson on the first case and my recollection is it was presented to us that the initial stop was protected by quasi-judicial immunity, which we agreed with, but that the arrest was related to the disruption of the tax division, which we rejected. I'm curious. We're sort of changing the game when we went back to trial. We go back and then we say, well, wait a minute. Part of the reason, or maybe now the reason, is that we were enforcing the judge's rule and that's the reason for the arrest, not just the stop, the arrest. I'm wondering, since it wasn't presented to this court that way, if there's not some sort of a waiver here. I don't think so, Your Honor. I think that, number one, it was never ruled on. There was no ruling on that issue. So that's true because it wasn't argued that way. Right. And I don't think that I'm required to raise every issue. I think if I wanted to, I could just say, well, I'm going to try them all. And so I think that it's much clearer laid out in my reply brief, the issues that are raised below, and then the posture as this case came up and as it was decided. So, as I understand the law, is that I get a clean slate when I go to the trial and the evidence should have been put forth in the fairest manner to both parties. That's a fair point, though. Did you argue to the district court that that issue wasn't decided by this court? I did. And it's in, I think, pages four and five of the transcript in the morning of the  And the court just disagreed? Yes, Your Honor. Likewise, as an independent basis for the introduction of that testimony was the fact that it unfairly prejudiced Dale Acosta because it made it appear that he was simply acting arbitrarily and maliciously and that his justification, partial justification for the arrest had no legitimacy at all. And it's laid out, and I'm getting into my rebuttal time, but it's laid out fairly clearly in my brief that there was some colloquy that took place that, you know, the plaintiff was allowed to ask my client, you know, well, is standing in the hallway against the law? No. Is walking around the courthouse against the law? No. And he had to just, you know, give these essentially truncated answers that made it appear falsely that he was taking action just on his own when actually he was trying to enforce Judge King's orders. If there are no further questions at this time, I'll reserve the rest of my time. Very well. Good morning, Mr. Porter. Good morning, Your Honor. May it please the court. I never played the game of whack-a-mole before, but I kind of think this is what this is, the case is all about. And Judge Erickson, you had it right. I mean, this issue came in front of the jury. If you look on page 34 and 35 of my brief, the juror, Judge Wilson allows jurors to ask questions, sometimes much to my chagrin, but he does allow that. And so the question was asked on page 34, one of the jurors asked the question, is there a reason why Mr. Hunt was not reminded of the judge's instruction during the encounter in the hallway? And if you go to page 35 of my brief, the witness, Mr. Acosta said, I'm sorry, Your Honor, can you repeat that one? Judge Wilson said, is there a reason why Mr. Hunt was not reminded of the judge's instruction during the encounter? Then he said, Your Honor, that conversation was had prior to my encounter with Mr. Hunt of that rule that was set forth by the officer who made the original contact, but that really wasn't the case because if you go to the arrest report of the police officer, which is the file on page 502 of the appendix, there were two police officers who talked about when Mr. Hunt was outside of the courthouse building, they came and told Mr. Hunt, per Sergeant Acosta's rules, you've got to be inside the courthouse building. And Mr. Hunt did come inside the building, inside the courtroom. This case, Your Honor, Mr. Acosta has kind of changed his position because during the summary judgment argument, he contended that he was entitled to quasi-judicial immunity because Mr. Hunt supposedly was creating a ruckus outside of the tax assessor's office. There was even statements taken from people who worked inside of the assessor's office. You see those statements at 508 of the appendix and 509 of the appendix from two people who worked inside the tax assessor's office who said that they heard noises outside the assessor's office. This issue has already been dealt with. We've already been on appeal. They took an interlocutory appeal on the issue of quasi-judicial immunity where Judge Erickson said that the judge may have justified the initial stop, but then it changed. Once Mr. Hunt said, look, I've got other business to take care of in this courthouse, I've got other things to do I need to talk to, other businesses, and then that changed because then at that point Mr. Acosta basically told Mr. Hunt, if you don't listen to what I have to say, I will arrest you for obstruction. During the encounter that Mr. Acosta had with Mr. Hunt, and we have the recording, Mr. Acosta never mentioned anything about Judge King, never mentioned anything about any kind of judge's rule. All he just simply said, you need to listen to what I have to say, and he even told Mr. Hunt, you need to stay out of the courtroom. Mr. Hunt testified during the trial that when he first got to the courthouse, which is about 15 minutes before 10, he went into the courtroom, and that's when he was told that only those cases that A through J, if your case is not involved with A through J, you have to go outside of the courtroom until the case is called. This defendant's name was Donald Williams, so Mr. Hunt knew that Williams had a long way to go, so that's why he decided to go outside of the courtroom and then when he could not find a place to sit in the courtroom itself, in the court building, that's when he went outside of the court building and he was told to come in. Yes sir? As I understand it, the district court took the position that this court ruled on whether the arrest could have been justified or whether there was arguable probable cause for an arrest based on a violation of the judge's rule. Right? Well, your honor, I'm... We didn't really reach that question, did we? Your honor, I believe the court really did in the appeal itself because, first of all, they never argued below that the reason why Mr. Acosta arrested Mr. Hunt was based on some violation of the judge's rule. Well, until the day of your trial maybe, but... Right, it's kind of like changing horses in the middle of a race. I don't disagree with that. Your whack-a-mole is a pretty good analogy, but maybe they can do that. Well, but again, the jury heard that. They heard testimony. There was testimony from Mr. Acosta. He testified that he was just simply trying to follow the judge's rule, even though it did not appear in the recording that Mr. Acosta had, and so whenever you have... Was he able to testify, though, that the reason or part of the reason that I affected the arrest was to enforce the judge's rule? Was he able to testify to that? Your honor, I think there's a... On page 28 of my brief, under the questioning of Mr. Wren, Mr. Wren asked Mr. Acosta. Mr. Acosta, when Judge King became... You objected to these questions, by the way? Did you object to this line of inquiry? I did, your honor. This was over my objection, and so Judge Wilson allowed me to come in. Then the question Mr. Wren asked Mr. Acosta, when Judge King became the judge in Mariana, did he set any rules about how he wanted his courtroom run? Acosta, yes, sir, he did. Question, did he establish any rules about who he wanted in the courtroom and when? Answer, yes, sir, he did. We have this whole questioning by Mr. Wren of his client in front of the jury, and the jury heard that testimony. It was up to the jury to decide the credibility, whether or not they wanted to give any weight to that. The jury obviously said, well, we're not going to give any weight to that, because one of the jurors asked the question, well, why you didn't even mention Judge King's rule when you confronted Mr. Hunt? The recording clearly showed that there was no mentioning of Judge King's rule. That's kind of like if we have a video, if the video contradicts what the officer says, then we go with the video, just like we have an audio recording. We were supposed to have a body cam in this case, but for whatever reason, the body cam disappeared, or we just didn't have it, never got it. Well, let's step back about what the argument is that's being made here on appeal is essentially this, is that even though the evidence is in the record and arguments were made, Officer Acosta was deprived of the opportunity to say, I effectuated the arrest of Mr. Hunt in part because of the governmental obstruction for failing to follow the policies of Judge King that I was trying to enforce. And on top of it, then, we have this other thing going on in front of the tax commissioner. Now, that's what he's saying that he would have testified to that he didn't get to testify to. And what he's arguing, essentially, is that that makes it much more difficult for him to prevail on the question of arguable probable cause, right? Because his purpose in effectuating the arrest was never before the jury plainly stated. It's all in there, it's all implied, it was all argued, right? So, I mean, I get all of that. But the question is, he claims that that is an error that is reversible. And why is he wrong on that point? Your Honor, I mean, on a cross-examination about myself, I specifically asked Mr. Acosta, first of all, I said, I played the audio recording to the jurors several times. And the jury listened to the audio recording several times, never heard anything about Judge King's order, never. The only thing that the jury heard from Mr. Acosta was, if you don't listen to what I have to tell you, you better stay out of this courtroom. Well, we know what the recording says. What he's saying is that he's not able to explain his purposes for arrest, right? And they may be entirely inconsistent with the recording and may not have been able to carry the day, but he claims that by not being able to say that, that he's been deprived. I don't see it that way. First of all, Your Honor, our questions of admissibility is clearly within the discretion of the court. As far as admissibility of evidence, that's clearly within the discretion of the court. And there has to be a showing of reversible error or abuse of discretion. First of all, that argument's not even been made. And that's not, and even if it had been made, that's not even, they were not able to meet that burden. But I specifically asked Mr. Acosta, I said, I'll play the audio for you. In the recording, you told Mr. Hunt that he could not be inside the courtroom. Is that correct? He said, yes. This man, the police officer told Mr. Hunt to stay out of the courtroom. And so he complied with that. He was not in the courtroom. And then he told him, look, I got some other businesses to take care of. And Mr. Acosta, and when Mr. Hunt said, look, as far as I'm concerned, this conversation is over, that angered Mr. Acosta. And when Mr. Hunt tried to walk away, that's when Mr. Acosta said, you're finished when I tell you you're finished. And so, again, they made all of this argument, doing summary judgment, doing the appeal of this case, that the reason why Mr. Hunt was arrested is because he caused some kind of disturbance outside the tax assessor's office. So now we're saying, well, that's not the real reason why he was arrested. The real reason why he was arrested is because he wasn't following Judge King's order to be inside the courtroom. And, again, if you look at the photograph, Mr. Hunt was confronted by Mr. Acosta an hour and 20 minutes after he had already been there. And so I don't know about this urgency about the fact that we were taking these inmates, and that's something that wasn't communicated. And so, again, I only got five minutes, so I kind of want to argue about my money on the issue of attorney's fees. Again, this case was tried in front of Judge Wilson. I guess I do take honor in the fact that this was probably Judge Wilson's last jury trial he had ever presided over before his untimely death. And so the issue of attorney's fees then went to Judge Marshall, who did not have an opportunity to preside over the jury trial. My attorney's fees, Your Honor, have been frozen at $350 an hour, I guess, since 2019. And so I haven't gotten a raise as far as that is concerned since 2019. And when you look at the fact that I've been practicing law, Your Honor, for almost 40 years, it will be August of this year, I've been practicing law almost 40 years. When you look at the fact that there are just a dirt of civil rights attorneys, especially in the state of Arkansas, and especially who have the experience that I have, an hourly rate of $425 an hour, which is what I requested, is not an unreasonable rate. I know that's within the discretion of the judge, but when you look at the fact that there are... And I cited the case, the Gerland case, I believe, that Judge Marshall has cited. In Gerland, you had lawyers who only had two years of experience in St. Louis getting paid $350 an hour. It's crazy. And so the vast majority of my cases, Your Honor, I've been dealing with civil rights cases. I've been told many times that I'm doing the lowest work. So this is an area of law that, especially plaintiff's lawyers, people just don't want to get into. It's a difficult area of law, and this is something that I've been doing for quite some time, and I have a great deal of passion in doing it. And I just believe, Your Honor, that Judge Marshall made a reversal error that I should be entitled to get the $425 an hour, which the other lawyers in the Gerland case out of St. Louis, one lawyer was practicing 13 years, got $595 an hour. I mean, how could that be much different than the market in St. Louis versus that in Little Rock, Arkansas? And so with that, if you have any other questions. Your rate was your only objection on the fee, though, right? Not hours, not anything else? No, they wanted just the rate, Your Honor. The other side claimed that I didn't negotiate in good faith. I'm sorry. That's the only issue you raised? Yes, sir. That's all I have. Thank you for your time. Thank you, Mr. Cooper. I think that Mr. Porter's pointing out of the juror question that the question was something to the effect of, was Mr. Hunt reminded of what the judge's rules were, highlights the evidence that was not in the record. And if we were allowed to cover that at trial, to the extent, I mean, it came in as some background information, but as far as what needed to be covered, the manner it needed to be covered, such a question by a juror would not be necessary at all. And I can point to things in the record where that would have been covered, but that's really, that's an important point. Mr. Wren, let me ask this. I'm sort of wondering how relevant it is that your client wanted to testify that part of the reason I did this was to enforce the judge's order. The reasonableness of a Fourth Amendment arrest is an objective test, not a subjective test, right? So couldn't you have argued independent of his subjective intent that objectively the facts in the record supported arguable probable cause to arrest on the basis of the judge's order? Yeah, but it's, the probable cause is based upon the objective information within the police officer's knowledge at the time of the arrest. And maybe I'm misunderstanding the question, but it was never really, it was at trial. But didn't all that come in? Only to the effect... The rule and the fact that he wasn't, he was in the wrong place, didn't all that come in? And from that, couldn't it have been argued that objectively there was reasonable... It could have been argued, and it should have been argued, but I was hamstrung from making that argument, is I think my point on appeal. Those were all valid points that throughout the trial I wish I could have made in an opening and closing, but instead what I was left with was the statement by Mr. Porter in his closing that this is a police officer that's abused his power. And I was hamstrung by that, and I'm fairly prejudiced. Thank you, Your Honor. Thank you, Mr. Renner. The court appreciates both counsel's appearance today and arguments. The case is submitted, and we'll issue another opinion in due course. Thank you, Your Honor. May I be excused? You may. That complete our docket for the day? The court will be in recess until 10 a.m. tomorrow morning.